IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-134

No. 124A21

Filed 5 November 2021

IN THE MATTER OF: I.P.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 15 February 2021 by Judge J.H. Corpening, II in District Court, New Hanover County. This matter was calendared for argument in the Supreme Court on 30 September 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Garron T. Michael for petitioner-appellee.*

*No brief filed for Guardian ad Litem.*

*Richard Croutharmel, for respondent-appellant.*

MORGAN, Justice.

¶ 1    Respondent-father appeals from the trial court's order terminating his parental rights to "Ivey,"[1] a minor child born on 27 November 2018. After careful review, we hold that there was no error in the trial court's determination that grounds existed to support the termination of respondent-father's parental rights to Ivey and there was no abuse of discretion in the trial court's conclusion that it would be in

---

[1] We use a pseudonym to protect the identity of the juvenile and for ease of reading.

Ivey's best interests to terminate respondent-father's parental rights. Accordingly, we affirm the trial court's order terminating respondent-father's parental rights to Ivey.

## I. Factual and Procedural Background

Prior to Ivey's birth, all of her older siblings had been taken into nonsecure custody by the New Hanover County Department of Social Services (DSS), with Ivey's mother eventually relinquishing her parental rights to each of these children. Ivey tested positive for cocaine at her birth on 27 November 2018 and was taken into custody by DSS. Ivey's mother identified three men as possible fathers of Ivey; one of them was respondent-father. On 11 December 2018, DSS filed a juvenile petition alleging that Ivey was a neglected juvenile. Following a hearing conducted on 31 January 2019 and by order filed on 25 February 2019, the trial court adjudicated Ivey to be neglected. On disposition, the trial court ordered Ivey's mother to comply with a case plan to effect reunification with Ivey and ordered the putative fathers identified by Ivey's mother to submit to DNA testing in order to confirm the identity of Ivey's biological father.

On 30 May 2019, the trial court adjudicated respondent-father as Ivey's biological father. At a hearing held on 3 October 2019 and in an order entered on 13 November 2019, the trial court directed respondent-father to comply with a case plan to effect placement of Ivey with him. The trial court changed Ivey's primary

permanent plan to adoption after an 8 July 2020 hearing and the entry of a 22 July 2020 order. Ivey's mother relinquished her parental rights to Ivey on 10 July 2020. On 1 September 2020, DSS filed a petition to terminate respondent-father's parental rights to Ivey. Following a hearing conducted on 26 and 29 October 2020 and by an order filed on 15 February 2021, the trial court terminated respondent-father's parental rights to Ivey. In its termination of parental rights order, the trial court found that three grounds existed to permit the termination of respondent-father's parental rights: neglect under N.C.G.S. § 7B-1111(a)(1), willful failure to make reasonable progress to correct the matters which caused Ivey to be in an out-of-home placement for at least 12 months under N.C.G.S. § 7B-1111(a)(2), and abandonment under N.C.G.S. § 7B-1111(a)(7). Respondent-father appeals.

¶ 4 On 17 June 2021, appellate counsel for respondent-father filed a brief, stating that "[a]fter a conscientious and thorough review of the record and the relevant law and consultation with other experienced appellate attorneys, [appellate counsel for respondent-father was] unable to identify any issues with sufficient merit on which to base an argument for relief on appeal." Pursuant to N.C. R. App. P. 3.1(e), appellate counsel for respondent-father identified two general issues for this Court's review that might potentially support relief on appeal. Appellate counsel for respondent-father also sent to respondent-father copies of counsel's brief, the record on appeal, and the transcript, along with a letter explaining respondent-father's right to file his

own pro se brief and instructions on how to do so. Respondent-father did not submit his own brief or any other filing to the Court.

The brief filed in this Court by appellate counsel on behalf of respondent-father only analyzes the ground for termination of parental rights found under N.C.G.S. § 7B-1111(a)(2)—failure to make reasonable progress—as a sufficient basis for the termination of respondent-father's parental rights. The trial court made the following findings concerning respondent-father's failure to make reasonable progress:

> 129. That the Court finds that Respondent-Father lacks credibility.
>
> 130. That the Court finds that Respondent-Father clearly fabricated his pay stubs and lease. The lease is suspect at best. The Court struggles to believe that this is a lease for that address.
>
> 131. That the Court finds that Respondent-Father's testimony about the quality of his visits with [Ivey] are not credible.
>
> . . . .
>
> 134. That this Court questions anything said by Respondent-Father and any documents provided by Respondent-Father.
>
> 135. That Respondent-Father is unfit to parent and is acting contrary and contradictory to his parental rights.
>
> 136. That this Court has no confidence that things will change any more than they have in the past twenty-three months that the child has been in care.
>
> 137. That Respondent-Father is not in a position to parent

[Ivey] almost two years after she came into care and at least eighteen (18) months since he learned that he was her biological father.

. . . .

146. That Respondent-Father has made periodic progress on his case plan but cannot remain consistent nor has addressed his significant mental health issues. Respondent-Father is partially compliant, at best, after two years and instead of focusing on completing the objectives of his case plan spent more time creating a façade of progress.

147. That the concerns that originally brought [Ivey] into care remain unaddressed by Respondent-Father. He lacks understanding of the detrimental effects of his decision-making and its lasting effects on [Ivey]. Respondent-Father has not complied and has failed to actively engage in most services designed to address the issues of neglect that brought [Ivey] into care and support reunification efforts. Respondent-Father continues to have ongoing and longstanding issues that impact the care and supervision of the child. He disengaged from his child for the first year of her life and then after three visits, disengaged with her again until the plan changed to adoption and the [TPR] Petition was filed.

148. That Respondent-Father has not made reasonable progress in correcting those conditions which led to the removal of the minor child based on his conduct. . . . Respondent-Father's lack of credibility does not show progress in being able to parent this child safely as Respondent-Father continues to put his needs ahead of hers.

. . . .

151. That Respondent-Father is not in a position to parent today. Respondent-Father would need significant therapy

> and verified stable income and housing before he would be in a position to reunite with [Ivey]. Respondent-Father has had the luxury of additional time to complete his case plan with the six-month hiatus of this case due COVID-19 and still has not accomplished the necessary objectives to reunite with [Ivey]. [The social worker and the guardian ad litem] do not see Respondent-Father being in a position to safely parent or complete his recommended treatment in the near future and this Court agrees.

Respondent-father's appellate counsel represents that he cannot refute these findings of fact as they apply to the ground of respondent-father's willful failure to make reasonable progress to reunify with Ivey after she had been in an out-of-home placement for at least twelve months, specifically in light of evidence in the record that: (1) there was a question as to respondent-father's veracity during the termination hearing; (2) there was some doubt as to whether respondent-father had stable employment, adequate and stable housing, and adequate and stable income; (3) there was a question as to whether respondent-father had another newborn child and romantic relationships with multiple women; (4) respondent-father failed to visit Ivey from June through November 2019 and January through July 2020, with questionable reasons for not visiting; (5) respondent-father's failure to consistently visit Ivey undoubtedly led to his inability to form a stronger bond with her; and (6) respondent-father never developed the parenting skills necessary to assuage Ivey's anxiety in his presence despite multiple parenting classes. It is well settled that "a finding of only one ground is necessary to support a termination of parental rights."

*In re A.R.A.*, 373 N.C. 190, 194 (2019).

¶ 6        After a careful review of the record on appeal in this matter, we agree with the candid assessment of respondent-father's appellate counsel and with the determinations of the trial court in this case. As this Court has noted, "[a] respondent's prolonged inability to improve [his] situation, despite some efforts in that direction, will support a finding of willfulness regardless of [his] good intentions, and will support a finding of lack of progress sufficient to warrant termination of parental rights." *In re J.S.*, 374 N.C. 811, 815 (2020) (extraneity omitted). Here, respondent-father has not achieved reasonable progress under his case plan and has not demonstrated an intention and commitment to do so. Based upon the evidence adduced in the trial court and upon the entirety of the record, we affirm the trial court's determination that grounds existed under N.C.G.S. § 7B-1111(a)(2) to support termination of respondent-father's parental rights.

¶ 7        Further, during the disposition phase of the termination of parental rights hearing, the trial court made findings of fact which addressed evidence concerning the specifically enumerated factors contained in the disposition statute, N.C.G.S. § 7B-1110(a): Ivey's age, her likelihood of adoption, her permanent plan, her bond with respondent-father, her relationship with her current caregivers, and other relevant considerations. The evidence showed that Ivey was adoptable and that her foster parents were interested in adopting her, that Ivey was bonded with her foster

parents, that Ivey did not have a bond with respondent-father, that Ivey lived in the foster home with a half-sister, and that the foster parents encouraged the paternal grandmother to bring Ivey's half-brother to the foster home so that Ivey could visit with him. This evidence amply supported the trial court's determination that termination of respondent-father's parental rights was in Ivey's best interests.

For the aforementioned reasons, the trial court's order terminating the parental rights of respondent-father is affirmed.

AFFIRMED.